[Cite as *State v. Hale*, 2023-Ohio-1057.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. W. Scott Gwin, P.J. |
| Plaintiff-Appellant | Hon. William B. Hoffman, J.<br>Hon. Craig R. Baldwin, J. |
| -vs- | |
| | Case No. 2022 CA 00043 |
| KATRINA HALE | |
| Defendant-Appellee | O P I N I O N |


CHARACTER OF PROCEEDINGS:     Appeal from the Licking County Court of Common Pleas, Case No. 22-CR-00157

JUDGMENT:     Reversed and Remanded

DATE OF JUDGMENT ENTRY:     March 30, 2023


APPEARANCES:

For Plaintiff-Appellant

JENNY WELLS
Licking County Prosecutor

ROBERT N. ABDALLA
Assistant Prosecuting Attorney
20 S. Second Street
Newark, Ohio 43055

For Defendant-Appellee

CHRIS BRIGDON
8138 Somerset Road
Thornville, Ohio 43076

*Hoffman, J.*

{¶1} Plaintiff-appellant the state of Ohio appeals the judgment entered by the Licking County Common Pleas Court granting Defendant-appellee Katrina Hale's (hereinafter "Hale") motion to suppress evidence seized on August 30, 2021.

STATEMENT OF THE FACTS AND CASE

{¶2} On August 30, 2021, Detective Benjamin Martens of the Licking County Sherriff's Office was in uniform, driving a marked cruiser. Detective Martens was working with officers of the Central Ohio Drug Enforcement Task Force, including Detectives Conley and Boerrstler.

{¶3} Detective Conley saw Terrance Cunningham driving a gold van. The van drove into the parking lot of an apartment complex, remained a short time, then left the parking lot. Cunningham was known to the detectives of the task force as a drug trafficker. Detective Boerstler relayed the van's license plate number and the identity of the driver to Detective Martens, who ran the information through LEADS and learned Cunningham had a suspended license. Detective Martens radioed to inquire whether he should initiate a traffic stop, and Detective Conley responded affirmatively.

{¶4} Detective Martens located the van in the parking lot of a Circle K store. Detective Martens pulled his cruiser behind the van with his emergency lights activated. A Newark Police Department officer also responded to the Circle K parking lot. The encounter was recorded on Detective Martens's cruiser camera and his body camera.

{¶5} As Detective Martens turned into the lot, Cunningham was standing outside the van. Although Detective Martens did not notice Hale at the time he first pulled into the lot, his camera captured Hale exiting the store, returning to the passenger side of the

vehicle, and reaching inside the open window before walking back toward the store.   The van was parked directly in front of the entrance to the store.

{¶6}   Detective Martens asked Cunningham whether he was supposed to be driving.  Cunningham said Hale was driving, and pointed toward Hale as she was entering the store.  Detective Martens approached Hale and asked her for identification.  Hale indicated she felt sick, and wanted to go into the store to use the restroom.  Detective Martens told Hale she was not free to leave.  Hale was carrying a black zipper purse and a grey zipper purse/pouch.  She produced identification, and Detective Martens told Hale to go have a seat on the bumper of his police cruiser.

{¶7}   Hale again asked to go inside the store because she felt sick.  Detective Martens told Hale to put her bags on the hood of the police cruiser.  Detective Martens informed Hale that Cunningham did not have a valid driver's license.   She admitted she knew Cunningham did not have a license, yet she asked him to drive to the store.

{¶8}   Returning to Cunningham, Detective Martens informed Cunningham he knew Cunningham was driving, and could charge Hale with negligent entrustment because she admitted she knew Cunningham did not have a valid license.  Detective Martens conducted a pat down search of Cunningham, finding a baggie in Cunningham's pocket.   Cunningham told the officer it was cocaine.   Detective Martens asked Cunningham if there was a weapon in the van.  Cunningham explained there was a firearm which belonged to Hale in the van.   After allowing Cunningham to finish smoking a cigarette, Detective Martens placed Cunningham in the cruiser.

{¶9}   Detective Martens returned to Hale, moving the bags a bit further out of her reach.  Detective Martens asked Hale if there was a firearm in the van.  Hale responded

there was a registered, unloaded handgun in the van. Detective Martens asked Hale if there were drugs in the van. Hale responded she had roach clips in her cigarette package, and admitted she did not have a medical marijuana card.   Detective Martens unzipped the grey bag Hale had placed on the cruiser, which he believed could contain a small firearm or marijuana.  Supp. Tr. 20-21.  He found a substance in the bag which he suspected was methamphetamine.  A search of the van revealed an unloaded firearm in a drawer underneath the passenger seat, two loaded magazines in a bag on the floor of the passenger side, a digital scale, and a box with drug residue.

{¶10}  Hale was indicted by the Licking County Grand Jury with aggravated possession of methamphetamine (R.C. 2925.11(A)(C)(1)(c)), aggravated trafficking in methamphetamine (R.C. 2925.03(A)(2)(C)(1)(d)), and improper handling of a firearm in a motor vehicle (R.C. 2923.16(B)).  A superseding indictment was later filed, adding an additional charge of possession of methamphetamine (R.C. 2925.11(A)(C)(1)(a)).

{¶11}  Hale filed a motion to suppress.  Following a suppression hearing, the trial court granted the motion, finding Hale was no longer a passenger of the vehicle, and officers had no additional reasonable suspicion Hale was involved in criminal activity; therefore, the seizure of Hale violated her Fourth Amendment rights.

{¶12}  It is from the June 14, 2022 judgment of the trial court the State prosecutes its appeal, assigning as error:


THE TRIAL COURT ERRED BY GRANTING APPELLEE'S MOTION

TO SUPPRESS EVIDENCE.

**{¶13}** Appellate review of a motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 154-155, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. When ruling on a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and to evaluate witness credibility. *See State v. Dunlap*, 73 Ohio St.3d 308,314, 1995-Ohio-243, 652 N.E.2d 988; *State v. Fanning*, 1 Ohio St.3d 19, 20, 437 N.E.2d 583 (1982). Accordingly, a reviewing court must defer to the trial court's factual findings if competent, credible evidence exists to support those findings. *See Burnside, supra; Dunlap, supra; State v. Long*, 127 Ohio App.3d 328, 332, 713 N.E.2d 1(4th Dist. 1998); *State v. Medcalf,* 111 Ohio App.3d 142, 675 N.E.2d 1268 (4th Dist. 1996). However, once this Court has accepted those facts as true, it must independently determine as a matter of law whether the trial court met the applicable legal standard. *See Burnside, supra, citing State v. McNamara,* 124 Ohio App.3d 706, 707 N.E.2d 539(4th Dist. 1997); *See, generally, United States v. Arvizu*, 534 U.S. 266, 122 S.Ct. 744, 151 L.Ed.2d 740(2002); *Ornelas v. United States*, 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911(1996). That is, the application of the law to the trial court's findings of fact is subject to a de novo standard of review. *Ornelas, supra.* Moreover, due weight should be given "to inferences drawn from those facts by resident judges and local law enforcement officers." *Ornelas, supra* at 698, 116 S.Ct. at 1663.

**{¶14}** An officer may request identification from the passengers of a vehicle lawfully stopped for a traffic violation without running afoul of the Fourth Amendment. *State v. Roseberry*, 5th Dist. Licking No. 2009-CA-78, 2010-Ohio-1112, ¶ 21, *citing State v. Jackson* (Apr. 25, 2006), Pickaway App. No. 05CA12 (April 25, 2006), *citing State v. Brown*, Montgomery App. No. 20336, 2004–Ohio–4058, at ¶ 14. Interrogation relating to

one's identity or a request for identification by the police does not, by itself, constitute a Fourth Amendment seizure. *See, I.N.S. v. Delgado,* 466 U.S. 210, 216, 104 S.Ct. 1758, 1762, 80 L.Ed.2d 247 (1984). "The temporary seizure of driver and passengers ordinarily continues, and remains reasonable, for the duration of the stop." *Roseberry* at ¶23, *citing Brendlin v. California,* 551 U.S.249, 258, 127 S.Ct. 2400, 168 L.Ed.2d 13.

**{¶15}** The trial court found because Hale had exited the vehicle, she was no longer a passenger of the vehicle, and the officer could not lawfully detain her as a passenger of a lawfully stopped vehicle. We disagree. We find Hale had not "left" the vehicle such as to no longer be considered a passenger of the vehicle. The vehicle was parked directly in front of the store, and at all times pertinent to the initial encounter with the police, Hale was at or very near the vehicle. As the officer was pulling into the parking lot, his camera recorded Hale exiting the store, but she returned to the vehicle and was seen reaching into the passenger side before turning to walk toward the store. Further, upon initial contact, Cunningham indicates Hale was driving the vehicle. Upon questioning, Hale admitted to being a passenger in the vehicle. We find under these circumstances Hale retained her status as a passenger of the vehicle throughout the encounter with law enforcement.

**{¶16}** As a passenger of the vehicle, Hale could be detained for the duration of the stop. The duration of a traffic stop may last no longer than is necessary to resolve the issue which led to the stop and issue a traffic citation, absent specific and articulable facts demonstrating a reasonable suspicion of criminal activity other than the traffic violation to justify continued detention. *State v. Robinette*, 80 Ohio St.3d 234, 1997-Ohio-343, 685 N.E.2d 762.

**{¶17}** We find the detention of Hale to be permissible based on the developing facts of the encounter, which over time provided a reasonable suspicion of criminal activity. Even though she was not cited for wrongful entrustment of the vehicle to Cunningham, we find Hale could be detained while officers checked the operator's licenses of both occupants and made a determination as to whether to charge Hale with wrongful entrustment.

**{¶18}** While patting down Cunningham for officer safety, officers found a baggie in his pocket. Cunningham stated the baggie contained cocaine. When asked if he had a firearm, Cunningham explained there was a firearm in the vehicle which belonged to Hale. Although a firearm may be transported in a vehicle in a lawful manner, this new information gave police further cause to detain Hale to determine if the weapon was in fact being transported in a lawful manner.

**{¶19}** After learning of the firearm from Cunningham, Detective Martens asked Hale if there was a weapon in the car, and she explained where the weapon was located in the vehicle. The detective then asked Hale if there were drugs in the car. She responded she had roach clips for marijuana in her cigarette package, and she did not have a medical marijuana card. Based on Hale's admission, we find the detective had probable cause to further detain Hale for the crime of possession of drug paraphernalia in violation of R.C. 2925.14.

**{¶20}** Once a law enforcement officer has probable cause to believe a vehicle contains contraband, the officer may search a validly stopped motor vehicle based upon the well-established automobile exception to the warrant requirement. *State v. Moore*, 90 Ohio St.3d 47, 51, 734 N.E.2d 804, 808 (2000), *citing Maryland v. Dyson*, 527 U.S. 465,

466, 119 S.Ct. 2013, 2014, 144 L.Ed.2d 442, 445 (`1999). Where police officers have probable cause to search an entire vehicle, they may conduct a warrantless search of every part of the vehicle and its contents, including all movable containers and packages, which may logically conceal the object of the search. *State v. Welch*, 18 Ohio St.3d 88, 480 N.E.2d 384 (1985), at syllabus.

**{¶21}** Detective Martens testified he began his probable cause search of the vehicle with the bags which had recently been removed from the vehicle, and testified the smaller bag he first opened could have contained a small firearm or marijuana. We find the search of the bags was permissible based on the automobile exception to the warrant requirement. Accordingly, we find the trial court erred in granting Hale's motion to suppress.

{¶22} The assignment of error is sustained.  The judgment of the Licking County Common Pleas Court is reversed, and this case is remanded for further proceedings according to law, consistent with this opinion.


By: Hoffman, J.
Baldwin, J.  concurs
Gwin, P.J. dissents

*Gwin, P.J., dissents*

{¶23} For the reasons which follow, I respectfully dissent.

{¶24} "For a search or seizure to be reasonable under the Fourth Amendment, it must be based upon probable cause and executed pursuant to a warrant. *Katz v. United States* (1967), 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576, 585; *State v. Brown* (1992), 63 Ohio St.3d 349, 350, 588 N.E.2d 113, 114. This requires a two-step analysis. First, there must be probable cause. If probable cause exists, then a search warrant must be obtained unless an exception to the warrant requirement applies. If the state fails to satisfy either step, the evidence seized in the unreasonable search must be suppressed. *Mapp v. Ohio* (1961), 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081; *AL Post 763 v. Ohio Liquor Control Comm.* (1998), 82 Ohio St.3d 108, 111, 694 N.E.2d 905, 908." *State v. Moore,* 90 Ohio St.3d 47, 49, 734 N.E.2d 804(2000). A search conducted without a warrant issued upon probable cause violates the Fourth Amendment, unless it comes within one of the "few specifically established and well-delineated exceptions" to the warrant requirement. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973).

*The automobile exception to the warrant requirement does not apply*

{¶25} The automobile exception recognizes that law enforcement officers may conduct a warrantless search *of a vehicle* when the officers have *probable cause* to believe *the vehicle* contains contraband or other evidence of illegal activity. *Chambers v. Maroney,* 399 U.S. 42, 48-49 (1970). In *Wyoming v. Houghton*, 526 U.S. 295, 119 S.Ct. 1297, 143 L.Ed.2d 408(1999), the United States Supreme Court held that police officers with probable cause to conduct a warrantless search of an automobile for contraband could search a purse left by a passenger on the back seat of the car. Sandra Houghton

was a passenger in a car that was stopped by police for speeding and displaying a faulty brake light. The officer saw a hypodermic syringe in the driver's shirt pocket. The driver admitted that he used the syringe to "take drugs." Based on the driver's admission, the officer searched the car for contraband. The search included Houghton's purse, which was on the back seat of the car. Houghton's purse contained methamphetamines and drug paraphernalia. The *Houghton* Court held that police officers with *probable cause to search a car* may search a passenger's belongings *found in the car* that could conceal the object of the search.  It was uncontested in the *Houghton* case that the police officers had probable cause to believe there were illegal drugs in the car before searching the car and the purse that was left inside the car. 526 U.S. at 300, 119 S.Ct. 1297, 143 L.Ed.2d 408.

{¶26} Justice Breyer stated in his concurring opinion in *Houghton* that it was important that Houghton had left her purse in the back seat of the car, a "considerable distance" away from her, and that she did not claim ownership of the purse until the officer found her identification inside. Justice Breyer viewed a woman's purse as a "special container" that is a repository "of especially personal items that people generally like to keep with them at all times." If a woman's purse is "attached to her person," Justice Breyer reasoned, it "might then amount to a kind of 'outer clothing' "that would "properly receive increased protection."

{¶27} In *United States v. Di Re*, 332 U.S. 581, 587, 68 S.Ct. 222, 92 L.Ed. 210(1948), the Supreme Court held that simply being a passenger in a car is not enough to justify a complete search of a person. This principle was reaffirmed in *Houghton*, 526 U.S. at 303, 119 S.Ct. 1297, 143 L.Ed.2d 408.

**{¶28}** The present case is distinguishable from *Houghton.* In the case at bar, the purse was not inside the van; rather it was in the hands of Hale well before Detective Martens developed any semblance of probable cause to search the van.

**{¶29}** Detective Martens never observed the van on the roadway. Rather, Detective Martens was told by Detective Conley to make the traffic stop. Supp. T. at 25-26. Detective Martens set out, and as he was passing the convenience store, noticed the van parked in the parking lot of the convenience store. Detective Martens turned his cruiser around and pulled into the Circle K parking lot with his emergency lights on. Supp. T. at 11-12. The van was parked, the engine turned off and no one was inside the van. Detective Martens pulled into the parking lot and parked the police cruiser. Body Cam. video at 2:06. He exited the police vehicle and approached Cunningham who is standing in the parking lot outside the van. Body Cam. video at 2:08. Hale is first seen opening the door and walking out of the convenience store. Body Cam. video at 2:13. Her hands and lower body cannot be seen. No testimony was presented that Detective Martens observed Hale remove the purse or purses from the van; rather, Detective Martens testified that he could not see what Hale was doing. Supp. T. at 12. Hale is seen walking back toward the doors of the convenience store, purse in hand, when Detective Martens summonsed her. Supp. T. at 14; Body Cam. video at 2:22.

**{¶30}** Because both Cunningham and Hale were outside the vehicle when Detective Martens first arrived in the parking lot, a protective search of the van for officer safety was not warranted. Further, as Detective Martens conceded, the stop was based upon the fact that Cunningham did not have a valid driver's license not for suspected drug activity.

{¶31} The evidence relayed to Detective Martens did not include a name, or whether the passenger of the van was male or female. It did not include any information that the passenger had a criminal record, had been involved in drug trafficking in the past, or was suspected of drug trafficking in the present. Nor did the information supplied to Detective Martens indicate that a drug sale or purchase by either Cunningham or Hale had been witnessed by any law enforcement officer. None of the law enforcement officers expressed any concern, or interest, in the passenger of the van prior to the stop. Other than the driving without a valid driver's license, there was no criminal activity observed by any law enforcement officer.

{¶32} Hale provided identification when asked by Detective Martens. No evidence was presented that Hale had any outstanding warrants or issues with her driver's license. Nothing in the record suggests that Hale had any history of drug activity that would lead to a reasonable articulable suspicion that she was engaged in illegal activity. Detective Martens did not testify during the suppression hearing that, prior to approaching her outside of the van in the parking lot, he observed Hale engage in any suspicious behavior.

{¶33} "Reasonable, articulable suspicion" requires something more than an "inchoate and unparticularized suspicion or 'hunch.'" *Terry v. Ohio*, 392 U.S. 1, 27, 88 S.Ct. 1868, 20 L.Ed.2d 889(1968). There was no more than an "unparticularized suspicion," or "hunch" demonstrated by the evidence introduced during the suppression hearing. Therefore, a search of the van related to finding evidence of either driving without a valid driver's license or wrongful entrustment of the vehicle was not warranted because

one could not reasonably expect to find evidence related to those offenses inside the van or inside the purses.

**{¶34}** In short, Detective Martens lacked a reasonable suspicion or probable cause to search either the van or the purses based upon his initial encounter with Cunningham and Hale. By the time Detective Martens found the cocaine in Cunningham's pocket, Hale had been outside the van clutching her purses for quite some time. The majority cites no authority for expanding the automobile exception to include a search of a purse being held by an individual who is outside the vehicle at the time the police first initiate a stop of the vehicle for a traffic offense and before the police develop probable cause to search the vehicle.

**{¶35}** Once a passenger has left the vehicle, the officer must possess specific and articulable facts to believe that a passenger is armed and dangerous, or is engaged in criminal activity, to justify any further intrusions. See, *e.g., State v. Taylor*, 138 Ohio App.3d 139, 145, 740 N.E.2d 704 (2nd Dist. 2000); *State v. Isbele,* 144 Ohio App.3d 780, 761 N.E.2d 697 (12th Dist. 2001) (where officers lacked reasonable suspicion the passenger was engaged in criminal activity, police had no reason to detain her after arresting the driver of the vehicle).

*Terry search for officer safety does not apply*

**{¶36}** In *Terry v. Ohio,* 392 U.S. 1 (1968) the Supreme Court held that if a police officer believes that an individual has a weapon which poses a danger to the officer, the officer may stop that individual to search the individual for a weapon.

**{¶37}** In the case at bar, Detective Martens told Hale to go have a seat on the bumper of his police cruiser. Body Cam video at 2:48. Martens informs Cunningham that

he is not under arrest. Body Cam. video at 4:37. Cunningham is not handcuffed. Cunningham is permitted to smoke a cigarette before being place into the cruiser.

{¶38}  While talking to Detective Martens, and with his permission, Hale opens the smaller purse, takes out a cigarette lighter and throws it to Cunningham.[1]  Body Cam video at 3:14. Detective Martens then turned his attention to Cunningham, while Hale remained alone within reaching distance of the purses. Body Cam video at 4:08. Detective Martens does not return to Hale for over five and one-half minutes.  Detective Martens then moves the two purses further away from Hale's reach. Body Cam. video at 9:51.

{¶39}  The record contains no evidence that Detective Martens believed that Hale was armed, or otherwise dangerous to the officers. He did not conduct a pat down, handcuff her or place her in one of the two police cruisers. She remained near the purses alone while Detective Martens interacted with Cunningham. The evidence is clear that the officers believed that Hale posed no threat of harm to them.

{¶40}  Detective Martens testimony that the smaller purse "could have" contained a small gun is rather disingenuous in light of his actions during the encounter. A protective search requires something more than an "inchoate and unparticularized suspicion or 'hunch.'" *Terry v. Ohio*, 392 U.S. 1, 27, 88 S.Ct. 1868, 20 L.Ed.2d 889(1968).  The Court of Appeals for Montgomery County has observed,

> Intertwined with the reasonableness requirement is the other
> requirement of *Terry* that the officer's suspicion must be articulable. That

---

[1] This is the very same purse that Detective Martens would later testify "could have" concealed a small gun.

connotes more than a mere subjective pronouncement. It requires demonstrable facts that, together with any rational inferences that may be drawn from them, reasonably support a conclusion that the suspect is armed and dangerous. The conclusion is necessary to the independent judicial review that a Fourth Amendment challenge to a pat-down search involves. In that connection, *Terry* states:

"'Nothing we say today is to be taken as indicating approval of police conduct outside the legitimate investigative sphere. Under our decision, courts still retain their traditional responsibility to guard against police conduct which is overbearing or harassing, or which trenches upon personal security without the objective evidentiary justification which the Constitution requires. When such conduct is identified, it must be condemned by the judiciary and its fruits must be excluded from evidence in criminal trials.'
[*Terry]* at 15, 88 S.Ct. 1868, 20 L.Ed.2d 889."

*State v. Phillips*, 155 Ohio App.3d 149, 799 N.E.2d 653, 2003–Ohio–5742 at ¶ 23–24.

### *Cunningham's past criminal activity*

{¶41} Knowledge that Cunningham had a past record for drug activity cannot provide a reasonable, articulable suspicion that Hale is also involved in criminal activity. "[K]knowledge of a person's prior criminal involvement (to say nothing of a mere arrest) is alone insufficient to give rise to the requisite 'reasonable suspicion' to justify a shift in investigatory intrusion from the traffic stop to a firearms or drugs investigation." *State v. Brown*, 5th Dist. Tuscarawas No. 2009AP050024, 2010-Ohio-1110, ¶ 27 citing *United*

*States v. Sandoval*, 29 F.3d 537, 542 (10th Cir. 1994) and *State v. Whitman*, 5th Dist. Holmes No. 09–CA–03, 2009–Ohio–5647 at ¶ 15. As the Court explained in *Sandoval*:

> "If the law were otherwise, any person with any sort of criminal record-or even worse, a person with arrests but no convictions-could be subjected to a *Terry*-type investigative stop by a law enforcement officer at any time without the need for any other justification at all. Any such rule would clearly run counter to the requirement of a reasonable suspicion, and of the need that such stops be justified in light of a balancing of the competing interests at stake." Id. at 543. *Accord, Joshua v. Dewitt* (6th Cir. 2003), 341 F.3d 430, 446.

29 F.3d at 543. Accordingly, a person's reputation or past record does not, standing alone, provide an officer with a reasonable suspicion to support a *Terry*-type investigative stop or search of that person or of a companion of that individual. *State v. Whitman*, *supra*. The Tenth Circuit noted *in United States v. Sandoval* that it had found "no case elsewhere that even suggest[s] the contrary." 29 F.3d at 542.

*Guilt by association - Cunningham's possession of cocaine*

{¶42} The cocaine was not in the care, custody or control of Hale. The cocaine was found in Cunningham's pocket, not inside the van. Cunningham admitted the drugs belonged to him. Body Cam. video at 4:29. The officer had no information implicating Hale in any criminal offense. No evidence was presented that the officer had any information pointing to Hale's possession of drugs. No information was provided to Detective Martens concerning the relationship between Cunningham and Hale. The

information that the officer had at the time was exclusive to, and singled out, Cunningham as not having a valid driver's license and suggesting a past record for drug activity.

{¶43} The notion that the discovery of a minimal number of drugs in the possession of one occupant of a vehicle creates a reasonable basis to suspect criminal activity on the part of another has been rejected by the courts. *See, State v. Taylor,* 138 Ohio App.3d 139, 147, 740 N.E.2d 704 (2nd Dist. 2000). "[A] person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search that person. *Sibron v. New York*, 392 U.S. 40, 62–63, [ 88 S.Ct. 1889, 20 L.Ed.2d 917] (1968). Where the standard is probable cause, a search or seizure of a person must be supported by probable cause particularized with respect to that person. This requirement cannot be undercut or avoided by simply pointing to the fact that coincidentally there exists probable cause to search or seize another or to search the premises where the person may happen to be." *Ybarra v. Illinois,* 444 U.S., 85, 91, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979). *Accord, Maryland v. Pringle,* 540 U.S. 366, 372-373, 124 S.Ct. 795, 157 L.Ed.2d 769 (2003).

{¶44} The fact that Hale and Cunningham may have previously been at a location frequented by drug users, standing alone, is not a basis for concluding that Hale herself was engaged in criminal conduct. *Brown v. Texas*, 443 U.S. 47, 52, 61 L.Ed.2d 357, 99 S.Ct. 2637, 2641 (1979). *See, also, State v. Fahy*, 49 Ohio App.3d 160, 161, 551 N.E.2d 1311, 1313 (3rd Dist. 1988) (finding defendant's "mere association and conversation with known drug users" insufficient facts upon which to infer current drug-related activity); *State v. Bogart*, 11th Dist., Lake No. 93–L–088, 1994 WL 45266 (Feb. 11, 1994) (noting that "courts of this state have consistently held that a person cannot be detained solely

upon the ground that the person [or presumably, his companion] has a reputation for engaging in criminal behavior").  The actual stop in the case at bar took place in broad daylight, in a public place, with members of the public also present in the parking lot throughout the encounter.

{¶45}  Because the officer had no reasonable, articulable suspicion that Hale knew Cunningham possessed cocaine or that she was an accessory to his possession of the cocaine, the fact that Cunningham had drugs in his possession did not authorize the police to search Hale's purse.

*Non-jailable offenses -Wrongful entrustment and Possession of marijuana*

{¶46}  Pursuant to R.C. 4511.203, Wrongful entrustment of a motor vehicle is an unclassified misdemeanor. The statute further provides,

> When the offense is an unclassified misdemeanor, the offender shall be sentenced pursuant to sections 2929.21 to 2929.28 of the Revised Code, *except that the offender shall not be sentenced to a jail term; the offender shall not be sentenced to a community residential sanction pursuant to section 2929.26 of the Revised Code*; notwithstanding division (A)(2)(a) of section 2929.28 of the Revised Code, the offender may be fined up to one thousand dollars; and, notwithstanding division (A)(3) of section 2929.27 of the Revised Code, the offender may be ordered pursuant to division (C) of that section to serve a term of community service of up to five hundred hours.

Emphasis added. Because an offender cannot be sentenced to jail, it would appear that the officer is limited to issuing a summons in lieu of arrest. *See,* Crim. R. 4(A)(3).

**{¶47}** Nor can Hale's admission that she had "marijuana roaches" in the van provide justification for the search of her purse. Possession of less than 200 grams of marijuana is a minor misdemeanor offense. R.C. 2925.11(C)(3)(a). Accordingly, it would not provide a basis for the officer to conduct a warrantless custodial arrest and search of Hale's person or her purse.

**{¶48}** In *State v. Brown*, 99 Ohio St.3d 323, 2003–Ohio–3931, the officers arrested the defendant for jaywalking, a minor misdemeanor offense. Citing a decision of the Montana Supreme Court, the Supreme Court of Ohio then held that police officers may not reasonably arrest and detain individuals for minor misdemeanor offenses when none of the circumstances in R.C. 2935.26 apply. The Court thus held that the defendant's arrest violated Section 14, Article I of the Ohio Constitution and the evidence discovered as a result of the search must be suppressed. Id. at ¶ 23–25, *citing State v. Bauer*, 307 Mont. 105, 36 P.3d 892 (2001).

**{¶49}** Hale was not arrested or cited by the officer, nor was she indicted by the grand jury, for possession of marijuana or possession of drug paraphernalia[2]. Hale was not under arrest when she informed the officer about the handgun, the roaches and the roach clip and before Detective Martens searched her purse. Body Cam. video at 10:35. The officer read Hale her *Miranda* rights only after he discovered the methamphetamine through his search of the purse. Id. Detective Martens told Hale she was not under arrest

---

[2] As possession of marijuana in an amount less than 200 grams is an offense for which a jail sentence is prohibited and which is not considered a criminal offense, imposing a jail sentence and criminal record for possession of a metal clip used to hold the "roach," is an anomaly that the legislature may wish to correct. In other words, an individual can have the actual drug, marijuana, in an amount less than 200 grams and not be subjected to a jail sentence or criminal record; yet another individual who possesses no marijuana, but only a "roach clip" can be sentenced to jail and have a criminal record. This could explain why Detective Martens did not charge Hale, and the grand jury did not indict Hale, for the marijuana and roach clip in spite of the fact the state obtained a superseding indictment to add a count of possession of methamphetamine.

even *after* he searched her purse. Id.  Accordingly, Detective Martens could not have based his decision to search the purse upon Hale's admission to the marijuana and the roach clip. Thus, Detective Martens could not justify the search of the purse as incident to a lawful custodial arrest of Hale.

*Hale's lawfully owned handgun*

**{¶50}**  Transporting a handgun in a motor vehicle is not in and of itself a criminal offense in the state of Ohio. However, there is a law governing how one may properly transport a handgun in a motor vehicle. R.C. 2923.16 Improperly Handling Firearms in a Motor Vehicle provides, in part,

>(A) No person shall knowingly discharge a firearm while in or on a motor vehicle.

>(B) No person shall knowingly transport or have a *loaded* firearm in a motor vehicle in such a manner that the firearm is accessible to the operator or any passenger without leaving the vehicle.

>(C) No person shall knowingly transport or have a firearm in a motor vehicle, unless the person may lawfully possess that firearm under applicable law of this state or the United States, *the firearm is unloaded*, *and the firearm is carried in one of the following ways*:

>(1) In a closed package, box, or case;

>(2) In a compartment that can be reached only by leaving the vehicle;

>(3) In plain sight and secured in a rack or holder made for the purpose;

(4) If the firearm is at least twenty-four inches in overall length as measured from the muzzle to the part of the stock furthest from the muzzle and if the barrel is at least eighteen inches in length, either in plain sight with the action open or the weapon stripped, or, if the firearm is of a type on which the action will not stay open or which cannot easily be stripped, in plain sight.

* * *

(5)(a) "Unloaded" means, with respect to a firearm other than a firearm described in division (K)(6) of this section, that no ammunition is in the firearm in question, no magazine or speed loader containing ammunition is inserted into the firearm in question, and one of the following applies:

(i) There is no ammunition in a magazine or speed loader that is in the vehicle in question and that may be used with the firearm in question.

(ii) Any magazine or speed loader that contains ammunition and that may be used with the firearm in question is stored in a compartment within the vehicle in question that cannot be accessed without leaving the vehicle or is stored in a container that provides complete and separate enclosure.

(b) For the purposes of division (K)(5)(a)(ii) of this section, a "container that provides complete and separate enclosure" includes, but is not limited to, any of the following:

(i) A package, box, or case with multiple compartments, as long as the loaded magazine or speed loader and the firearm in question either are in separate compartments within the package, box, or case, or, if they are

in the same compartment, the magazine or speed loader is contained within a separate enclosure in that compartment that does not contain the firearm and that closes using a snap, button, buckle, zipper, hook and loop closing mechanism, or other fastener that must be opened to access the contents or the firearm is contained within a separate enclosure of that nature in that compartment that does not contain the magazine or speed loader;

(ii) A pocket or other enclosure on the person of the person in question that closes using a snap, button, buckle, zipper, hook and loop closing mechanism, or other fastener that must be opened to access the contents.

Emphasis added[3].

{¶51} In the case at bar, Hale informed Detective Martens that she had a lawfully owned, unloaded, handgun in the lockable sliding drawer beneath the passenger seat. Detective Martens had moved both cases further out of Hale's reach prior to being informed that she had a lawfully owned, unloaded handgun in the vehicle. Until Detective Martens located a magazine or clip to the handgun in a separate bag on the floor by the passenger seat of the van, he did not have probable cause to arrest Hale for Improper Handling of a Firearm in a Motor Vehicle. The search of the purses occurred *before* Detective Martens determined that Hale may be improperly transporting the firearm in the motor vehicle. Therefore, because Hale could not reach the bags, and because Detective Martens did not have probable cause to arrest Hale, a search of the handbags cannot be justified either as a search incident to arrest or a protective search.

---

[3] R.C. 2923.16 has been amended effective June 12, 2022 and again effective April 3, 2023, both of which occurred after Hale's arrest.

*Inventory search*

**{¶52}** The search of the purses was not a valid inventory search under *South Dakota v. Opperman*, 428 U.S. 364, 372, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976), because the van did not contain Hale's purse and, in addition, the van was not impounded. Detective Martens told Hale that he did not plan on impounding the van because it was not on a public roadway. Body Cam. video at 12:53.

*Conclusion*

**{¶53}** While it may be tempting to find that, because drugs were found in Hale's purse, the ends justify the means, to do so lessens the protections afforded to, not just criminals, but also every citizen, from unwarranted interference by the police.

**{¶54}** In the absence of probable cause of criminal activity on Hale's part, and because the search of the purse does not fall within "one of the few specifically established and well-delineated exceptions" to the warrant requirement, I agree with the trial court's conclusion that the police impermissibly searched Hale's purse without first obtaining a warrant.

**{¶55}** I would therefore affirm the decision of the trial court.