[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Hale*, Slip Opinion No. 2024-Ohio-4866.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2024-OHIO-4866

THE STATE OF OHIO, APPELLEE, *v*. HALE, APPELLANT.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Hale*, Slip Opinion No. 2024-Ohio-4866.]**

*Criminal law—Warrantless seizure—Fourth Amendment to United States Constitution—A passenger who has alighted from a parked vehicle may be detained by law-enforcement officers under Fourth Amendment as part of an investigatory stop of vehicle's driver long enough to allow officers to dispel any reasonable, articulable suspicion of criminal activity officers had for initiating the stop, and detention of the passenger may continue as facts evolve during encounter that give officers reasonable suspicion to believe the passenger was involved in other criminal activity—Judgment affirmed.*

(No. 2023-0621—Submitted December 12, 2023—Decided October 10, 2024.)

APPEAL from the Court of Appeals for Licking County,

No. 2022 CA 00043, 2023-Ohio-1057.

_____

DONNELLY, J., authored the opinion of the court, which KENNEDY, C.J., and DEWINE, STEWART, BRUNNER, and DETERS, JJ., joined. FISCHER, J., dissented, with an opinion.

**DONNELLY, J.**

{¶ 1} The Fourth Amendment to the United States Constitution prohibits unreasonable searches and seizures, but it does not prohibit law enforcement from undertaking brief investigatory stops based on a reasonable suspicion of criminal activity. In this case, after plain-clothes law-enforcement officers reported witnessing a driver commit an alleged traffic violation, a uniformed officer detained the vehicle's driver and passenger after the vehicle was parked and both occupants had alighted from the vehicle. We are asked to decide whether the detention of the passenger by the law-enforcement officer who conducted the stop, and the officer's search of the passenger's purses, violated the Fourth Amendment.

## BACKGROUND

{¶ 2} On August 30, 2021, plain-clothes detectives from the Central Ohio Drug Enforcement Task Force saw Terrance Cunningham driving a gold minivan. Cunningham was known to the task force as a suspected drug trafficker. The task-force detectives relayed the minivan's license-plate number and Cunningham's identity to Detective Benjamin Martens with the Licking County Sheriff's Office, who was also assigned to the task force. Detective Martens checked Cunningham's information in a law-enforcement database and confirmed that Cunningham did not have a valid driver's license. Together, Detective Martens and the task-force detectives decided that Detective Martens should stop Cunningham's vehicle.

{¶ 3} Using information provided to him by the plain-clothes officers, Detective Martens located the minivan in the parking lot of a convenience store. Detective Martens pulled into the parking lot and parked behind the minivan, which was parked directly in front of the store's entrance. When Detective Martens

arrived at the parking lot, Cunningham was standing next to the minivan while Katrina Hale, who had been a passenger in the minivan, exited the convenience store, returned to the minivan, and leaned through the passenger's-side window.

{¶ 4} Detective Martens asked Cunningham if he was supposed to be driving, to which Cunningham responded that they had traveled only a short distance and that Hale was the driver. Cunningham then pointed toward Hale, who was leaving the passenger's side of the minivan and trying to go back inside the store. Detective Martens approached Hale and asked her for identification, which she produced from one of the two clutch purses she was carrying. During this interaction, Hale appeared nervous, claiming that she needed to vomit and asking to return to the store. Rather than allow Hale to return to the store, Detective Martens directed Hale to go sit on the bumper of his patrol car. As Hale grew more agitated, Detective Martens invited Hale to place her two purses on the patrol car's hood. In response to Detective Martens's questioning, Hale admitted that she knew Cunningham did not have a valid driver's license but that she had asked Cunningham to drive her to the store because she was feeling ill.

{¶ 5} Next Detective Martens resumed questioning Cunningham. After informing Cunningham that he knew Cunningham had been driving the minivan, Detective Martens conducted a pat-down search of Cunningham, during which he discovered a plastic bag containing a substance that Cunningham identified as cocaine. While allowing Cunningham to finish smoking a cigarette, Detective Martens asked Cunningham several questions, including what officers might find when they searched the minivan. Cunningham stated that a firearm registered to Hale was in the minivan. Once Cunningham finished his cigarette, Detective Martens placed him in the back of the patrol car.

{¶ 6} Detective Martens then turned his attention to Hale, who was standing at the front of the patrol car. Moving Hale's purses—which were on the patrol car's hood—out of her reach, Detective Martens asked Hale whether there were any

3

illegal items or any guns in the minivan. Hale admitted that her registered firearm was in the minivan, as well as marijuana roaches. Hale also admitted to not having a medical-marijuana card. While this discussion was ongoing, Detective Martens searched Hale's purses, discovering in one of them a bag containing methamphetamines. At this point, Detective Martens informed Hale of her Fifth Amendment rights to remain silent and to counsel. After some discussion, Hale invoked her right to remain silent and was placed in the rear of a second patrol car.

{¶ 7} In his search of the minivan, Detective Martens discovered an unloaded firearm in a drawer under the front passenger's seat, two loaded magazines (one in a bag on the floor of the front passenger's seat and one in a bag in the rear of the vehicle), an open container of alcohol, and a digital scale. The Licking County Grand Jury indicted Hale on one count of aggravated possession of methamphetamine, in violation of R.C. 2925.11(A)(C)(1)(a); one count of aggravated possession of methamphetamine, in violation of R.C. 2925.11(A)(C)(1)(c); one count of aggravated trafficking in methamphetamine, in violation of R.C. 2925.03(A)(2) and (C)(1)(d); and one count of improperly handling a firearm in a motor vehicle, in violation of R.C. 2923.16(B).

{¶ 8} Before trial, Hale moved to suppress the evidence gathered during the stop. Hale argued that because Detective Martens had lacked reasonable suspicion to stop Cunningham, anything Detective Martens learned from his interaction with Cunningham could not form the basis for his later detention of Hale and his search of her clutch purses. Hale also argued that the automobile exception to the Fourth Amendment's warrant requirement did not apply here, because Hale was not a passenger in the minivan when Detective Martens seized and searched her purses.

{¶ 9} After a hearing on the motion, the Licking County Common Pleas Court found that Hale was no longer a passenger in the minivan when Detective Martens stopped and detained Cunningham on suspicion of driving without a license. The trial court focused on the fact that Hale was not physically in the

4

minivan when Detective Martens detained her; rather, the minivan was parked and Hale had already exited the vehicle and entered the convenience store before her encounter with Detective Martens. Thus, the trial court reasoned, Detective Martens had no justification for detaining Hale as part of his investigation into Cunningham's alleged traffic violation. As a result, the trial court granted Hale's motion in part, suppressing the statements that Hale had made to law-enforcement officers during the stop and any evidence that had been discovered during the search of Hale or her purses.[1] The trial court did not answer whether Detective Martens had justification to search Hale's purses apart from the propriety of his detention of Hale during the stop.

{¶ 10} A divided panel of the Fifth District Court of Appeals reversed the trial court's judgment. The Fifth District found that Hale remained a passenger in the minivan when Detective Martens effected a valid stop of Cunningham for a suspected traffic violation. 2023-Ohio-1057, ¶ 15 (5th Dist.). To reach this determination, the appellate court relied on Hale's being near the minivan during her encounter with Detective Martens, her return to the minivan and reaching into the vehicle before attempting to go back inside the convenience store, and her admission to being a passenger in the minivan when questioned by Detective Martens, as showing that Hale had remained a passenger of the minivan. Id. Hale's status as a passenger, the appellate court reasoned, allowed Detective Martens to detain her for the duration of the stop. And as circumstances developed that supported extending the stop, so too did Detective Martens's justification for detaining Hale. Id. at ¶ 15-17. The appellate court also addressed Detective Martens's search of Hale's purses separately from the propriety of his detention of Hale during the stop, concluding that the search was valid under the automobile

---

1. The trial court also denied Hale's request to suppress evidence discovered through Detective Martens's searches of Cunningham and the minivan. That portion of the trial court's decision is not at issue in this appeal.

exception to the Fourth Amendment's warrant requirement. *Id.* at ¶ 18-21. For his part, the dissenting judge analyzed the exceptions to the Fourth Amendment's warrant requirement and found that none of them applied here. *Id.* at ¶ 23-52 (Gwin, J., dissenting). And on that basis, he argued that he would have affirmed the trial court's judgment on the motion to suppress. *Id.* at ¶ 53-55 (Gwin, J., dissenting).

{¶ 11} Hale appealed to this court, and we accepted jurisdiction to resolve whether Detective Martens's seizure of Hale and his search of her purses violated the Fourth Amendment. 2023-Ohio-2236.

## DISCUSSION

{¶ 12} In this case, Hale asks us to reverse the court of appeals' judgment and reinstate the trial court's order suppressing the evidence collected after she was detained by Detective Martens. Our review of a motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 2003-Ohio-5372, ¶ 8. We must accept the trial court's factual findings if those findings are supported by competent, credible evidence. *See State v. Fanning*, 1 Ohio St.3d 19, 20 (1982). But we do not afford the trial court's legal conclusions any deference, and we determine questions of law de novo. *See Burnside* at ¶ 8.

### *The Fourth Amendment permits warrantless investigatory stops based on a reasonable, articulable suspicion of criminal activity*

{¶ 13} The crux of Hale's argument is that her detention by Detective Martens in the convenience store's parking lot violated her constitutional rights under the Fourth Amendment to the United States Constitution.[2] And because that

---

2. In her merit brief, Hale makes a glancing reference to the protection against unreasonable search and seizure contained in Article I, Section 14 of the Ohio Constitution, and makes a brute assertion that the stop here also violated that provision. Despite this assertion, Hale's arguments rely entirely on jurisprudence concerning the federal right to be free from unreasonable search and seizure. As a result, we limit our analysis to Hale's rights under the Fourth Amendment to the United States Constitution.

initial stop was unconstitutional, everything that flowed from the stop—including Detective Martens's discovery of the methamphetamines in one of her purses—was impermissible and should be suppressed.

{¶ 14} The Fourth Amendment protects "[t]he right of the people to be secure in their person, houses, papers, and effects, against unreasonable searches and seizures." A seizure for purposes of the Fourth Amendment occurs when law enforcement, through physical force or a display of authority, restrains a person's liberty of movement such that the person would believe they could not leave. *United States v. Mendenhall*, 446 U.S. 544, 553-554 (1980). Warrantless searches or seizures are intrinsically unreasonable unless they fall into a "well-defined and carefully circumscribed" exception to the Fourth Amendment's warrant requirement. *State v. Roberts*, 2006-Ohio-3665, ¶ 98, citing *Coolidge v. New Hampshire*, 403 U.S. 443, 454-455 (1971). One such exception is investigatory stops by law-enforcement officers.

{¶ 15} "The Fourth Amendment permits brief investigative stops . . . when a law enforcement officer has 'a particularized and objective basis for suspecting the particular person stopped of criminal activity.' " *Navarette v. California*, 572 U.S. 393, 396 (2014), quoting *United States v. Cortez*, 449 U.S. 411, 417-418 (1981). This "reasonable, articulable suspicion that [a] person has been, is, or is about to be engaged in criminal activity" acts as a sort of middle ground for the amount of knowledge required of law-enforcement officers to justify a stop. *United States v. Place*, 462 U.S. 696, 702 (1983). The level of suspicion must be more than a "mere hunch" that something criminal is afoot, but it need not rise to "proof of wrongdoing by a preponderance of the evidence"; the required standard of proof is "obviously less than is necessary for probable cause." (Cleaned up.) *Navarette* at 397. When deciding whether reasonable suspicion existed to justify an investigatory stop, courts look at the totality of the circumstances of the stop "to see whether the [law-enforcement] officer [had] a 'particularized and objective

basis' for suspecting legal wrongdoing." *United States v. Arvizu*, 534 U.S. 266, 273 (2002), quoting *Cortez* at 417.

{¶ 16} Once an investigatory stop has occurred, the detaining officer must tailor the scope and duration of the stop to the circumstances of the encounter. *Florida v. Royer*, 460 U.S. 491, 500 (1983). Thus, the investigative methods used by law enforcement must be the "least intrusive means reasonably available to verify or dispel the officer's suspicion" of criminal activity. *Id.* Similarly, the detention "must be temporary and last no longer than is necessary" to carry out the stop's purposes. *Id.*

{¶ 17} In their briefs to this court, both parties focus on whether Detective Martens's detention of Hale should be considered a traffic stop and should be subject to the Fourth Amendment analysis for those sorts of encounters. This focus flows from the Fifth District's conclusion that Hale was a passenger in the minivan during a traffic stop, making her detention valid under the Fourth Amendment. *See* 2023-Ohio-1057 at ¶ 14-16 (5th Dist.).

{¶ 18} To be sure, the facts here cut both ways concerning whether the encounter between Hale and Detective Martens was a "traffic stop." In favor is the fact that Detective Martens initiated the stop after plain-clothes law-enforcement officers reported witnessing Cunningham commit an alleged traffic violation, which Detective Martens confirmed when he learned Cunningham had been driving without a valid driver's license. On the other hand, Cunningham had parked the minivan and Hale was no longer a passenger inside the vehicle when Detective Martens initiated his detention of Cunningham; by that time, Hale had exited the vehicle and entered the convenience store. But when Detective Martens detained Hale, she'd been identified as a potential driver of the minivan and had returned to the vehicle's vicinity. In sum, the facts do not clearly answer whether the encounter between Hale and Detective Martens falls within the realm of a traffic stop. But focusing on answering that question misses the forest for the trees.

{¶ 19} The United States Supreme Court has consistently treated traffic stops *as a form* of an investigatory stop. *See, e.g.*, *Navarette*, 572 U.S. at 395-396 (characterizing a traffic stop as a type of investigatory stop); *Kansas v. Glover*, 589 U.S. 376, 380 (2020) (applying the reasonable-and-articulable-suspicion standard when assessing a law-enforcement officer's investigatory traffic stop). And recently, this court noted that traffic stops should be evaluated using the standard for brief investigatory stops. *State v. Dunlap*, 2024-Ohio-4821, ¶ 16 (lead opinion), citing *Berkemer v. McCarty*, 468 U.S. 420, 439 (1984). Irrespective of whether Detective Martens's detention of Hale was a traffic stop, the question before us in assessing the stop's constitutionality remains the same: Did Detective Martens have a reasonable, articulable suspicion that criminal activity was afoot when he detained Hale? And it is to that question that we now turn.

### *Detective Martens's initial detention of Hale was reasonable*

{¶ 20} When the circumstances of Detective Martens's detention of Hale are viewed in their totality, they show that Detective Martens possessed a reasonable, articulable suspicion of criminal activity. For that reason, Detective Martens's investigatory stop of Hale to confirm or dispel that suspicion was reasonable.

{¶ 21} Let's start at the beginning. Law-enforcement officers witnessed Cunningham, who was known to them as a suspected drug trafficker, driving a gold minivan. They radioed that information to Detective Martens, who checked the relevant law-enforcement database and confirmed that Cunningham's driver's license had been suspended. Yet Cunningham had been seen driving. At that point, Detective Martens had a particularized and objective belief that Cunningham—who did not have a valid driver's license but had been seen driving—had committed the crime of operating a motor vehicle without a valid driver's license. *See generally* R.C. 4510.12; *see also Glover* at 381-383 (facts leading a law-enforcement officer to infer that a vehicle was being driven by an unlicensed driver are sufficient to

support the officer's reasonable suspicion of the traffic violation, justifying an investigatory stop). Based on that belief, Detective Martens had the authority to briefly detain Cunningham to confirm or dispel his suspicion of criminal activity. *See Maumee v. Weisner*, 87 Ohio St.3d 295, 297 (1999), citing *United States v. Hensley*, 469 U.S. 221, 231 (1985) (law-enforcement officers may rely on police dispatches for facts to justify an investigatory stop). And that is what Detective Martens did in the convenience store's parking lot.

{¶ 22} It was during that valid investigatory stop of Cunningham that Detective Martens also detained Hale. Hale argues that Detective Martens could not detain her, because when he effected the stop, she was no longer a passenger in the minivan—i.e., the vehicle was parked and she had exited the vehicle and entered the convenience store. But whether Hale was still a passenger in the vehicle when Detective Martens detained her is not dispositive of the question whether Detective Martens had a reasonable suspicion to believe that Hale was involved in criminal activity. Rather, the dispositive question is whether the facts that Detective Martens possessed when he stopped Hale provided a reasonable basis for his suspicion. *See Terry v. Ohio*, 392 U.S. 1, 21-22 (1968), citing *Carroll v. United States*, 267 U.S. 132 (1925), and *Beck v. Ohio*, 379 U.S. 89, 96-97 (1964). And we conclude that they did.

{¶ 23} After being lawfully stopped by Detective Martens, Cunningham claimed that Hale had been driving the minivan and pointed toward her. When Detective Martens approached Hale, she was in the vicinity of the minivan. Indeed, the dashboard-camera video footage from Detective Martens's patrol car shows that Hale had exited the convenience store, leaned into the minivan's passenger's-side window, and retrieved items from or replaced items in the minivan while Detective Martens spoke with Cunningham. Far from being a dispassionate and unrelated observer to what was going on, Hale actively associated herself with and exercised control over the vehicle that was at the center of the suspected criminal activity.

What is more, evidence at the hearing on Hale's motion to suppress shows that Hale was walking from the minivan and attempting to go back inside the convenience store when Detective Martens stopped her to investigate her involvement in the suspected criminal activity that precipitated his stop of Cunningham. At that point, given Cunningham's assertions that Hale had been the person driving the minivan and Detective Martens's own observations, Detective Martens possessed facts that supported his suspicion that Hale was involved in suspected criminal activity.

{¶ 24} This suspicion was bolstered by Detective Martens's continued interaction with Hale. In response to Detective Martens's questioning, Hale admitted that she knew Cunningham did not have a valid driver's license and that despite that knowledge, she still asked him to drive her to the store. This admission by Hale gave Detective Martens reasonable suspicion to believe that Hale had wrongfully entrusted a motor vehicle to an unlicensed driver. *See* R.C. 4511.203(A)(1) (prohibiting a person who owns or controls a motor vehicle from knowingly entrusting it to another person who does not have a valid driver's license). The discovery of these facts allowed Detective Martens to extend Hale's detention so that he could investigate his additional suspicions of criminal activity. *See State v. Robinette*, 1997-Ohio-343, ¶ 27 (law-enforcement officers may extend investigatory stops after obtaining additional facts that give rise to a suspicion of criminal activity that warrants further investigation).

{¶ 25} Applying the law to the facts here shows that Detective Martens's actions satisfy the Fourth Amendment's touchstone for search and seizure— reasonableness. *See Brigham City v. Stuart*, 547 U.S. 398, 403 (2006), citing *Flippo v. West Virgina*, 528 U.S. 11, 13 (1999), and *Katz v. United States*, 389 U.S. 347, 357 (1967). The purpose of the investigatory stop was for Detective Martens to confirm or dispel law enforcement's reasonable suspicion that the minivan was being driven illegally. That was more than enough justification for Detective Martens to detain Cunningham, the suspected driver, and it was enough for

Detective Martens to detain Hale once she was identified as a possible driver of the minivan while the detective investigated the suspected criminal activity. Furthermore, the facts that show Hale was associating herself with and exercising some control over the minivan when Detective Martens first approached her. Indeed, even if Hale had exited the vehicle and entered the convenience store while Detective Martens detained and questioned Cunningham, the fact remains that Hale had returned to the vehicle, leaned inside it, and was walking away from the vehicle when she was detained by Detective Martens. These circumstances provided a reasonable basis for Detective Martens to detain Hale. And as a result, Hale's detention by Detective Martens did not violate the Fourth Amendment.

### *We do not reach the constitutionality of Detective Martens's search of Hale's purses*

{¶ 26} In her sole proposition of law, Hale alleges that Detective Martens's seizure and search of her two purses also violated the Fourth Amendment. But the only argument Hale provides in support of that claim flows from her challenge to the constitutionality of the investigatory stop: she asserts that because she was improperly detained during Detective Martens's investigatory stop, any evidence found in her purses during that detention "must be excluded as the fruit of a constitutional violation." She provides no separate basis for us to assess the constitutionality of Detective Martens's search of her purses.

{¶ 27} An appellate court addresses and resolves legal error as presented and argued by the parties. *State v. Quarterman*, 2014-Ohio-4034, ¶ 19. It is not the court's task to formulate and resolve a party's legal arguments for her. *Id.* In the proceedings before the trial court and the Fifth District, Hale asserted that Detective Martens's search of her purses violated the Fourth Amendment on grounds other than the alleged unconstitutionality of the initial stop. Yet she chose not to include those arguments in her briefing here and failed to develop them—even expressly disclaiming them—during oral argument when prompted by this court's

questioning. The only argument she makes is that the evidence found during the search of her purses is the fruit of an unconstitutional stop. As discussed above, however, Detective Martens's detention of Hale did not violate the Fourth Amendment. As a result, we make no comment about whether the detective's search of Hale's purses during the stop was unconstitutional.

## CONCLUSION

{¶ 28} Nothing in this case leads us to believe that Detective Martens's detention of Hale as part of his investigatory stop after plain-clothes officers reported witnessing Cunningham commit an alleged traffic violation is unreasonable. As a result, Detective Martens's seizure of Hale was not an unconstitutional investigatory stop and therefore did not violate the Fourth Amendment to the United States Constitution. And given Hale's failure to argue in her briefs to this court any other grounds on which Detective Martens's search of her purses might have violated the Fourth Amendment, we decline to discuss whether that search was unconstitutional. Thus, we affirm the judgment of the Fifth District Court Appeals reversing the trial court's judgment granting Hale's motion to suppress.

Judgment affirmed.

_____

**FISCHER, J., dissenting.**

{¶ 29} The majority opinion holds that the Fourth Amendment to the United States Constitution allows law-enforcement officers to seize recent passengers of vehicles when the driver was stopped on suspicion of driving with a suspended license, because those officers have reasonable suspicion to believe that the passengers were involved in criminal activity. Because this holding runs afoul of the Fourth Amendment, I respectfully dissent.

{¶ 30} The Fifth District Court of Appeals treated this case as involving a traffic stop and stated that under the circumstances of the traffic stop, officers could

detain appellant, Katrina Hale, if she was considered a "passenger of the vehicle." 2023-Ohio-1057, ¶ 15 (5th Dist.). The court of appeals concluded that Hale was a passenger of the vehicle because the vehicle was parked directly in front of the convenience store where the stop took place; the officer's body camera recorded Hale exiting the store, returning to the vehicle, and reaching into the passenger's side of the vehicle before trying to return to the store; and Hale "was at or very near the vehicle" at all times pertinent to the stop. *Id.* Furthermore, Terrence Cunningham, who had been seen driving the vehicle, told Detective Martens—the officer who initiated the stop—that Hale had been driving the vehicle, and upon questioning, Hale admitted that she had been a passenger in the vehicle. *Id.*

**{¶ 31}** The majority opinion states that analyzing whether the stop in this case was a traffic stop "misses the forest for the trees," majority opinion, ¶ 18, because traffic stops are a form of investigatory stop, *id.* at ¶ 19. Therefore, the majority opinion concludes that what matters here is whether Hale's detention was proper under the requirements for investigatory stops and whether Detective Martens had "a reasonable, articulable suspicion that criminal activity was afoot when he detained Hale." *Id.* at ¶ 19.

**{¶ 32}** The majority opinion concludes that Detective Martens did have a reasonable suspicion of some sort of unspecified criminal activity to justify his seizure of Hale because when he arrived in the parking lot to initiate the stop, Hale "was walking from the minivan and attempting to go back inside the convenience store," *id.* at ¶ 23, and because Cunningham asserted that Hale had been driving the minivan, *id.* at ¶ 23. But the majority opinion never says what kind of criminal activity Detective Martens reasonably suspected of Hale at that time, and that is for good reason. Reaching into a vehicle and then returning to a convenience store is not a crime, nor is it indicative of any crime. And if Hale had been the one driving the minivan as Cunningham claimed, then there was no crime to investigate. Detective Martens initiated the stop because law-enforcement officers suspected

14

*Cunningham* of driving with a suspended license. Therefore, there were two possibilities here: either Hale had been driving, which was not a crime, or Cunningham had been driving with a suspended license while Hale was a passenger. But it is not a crime to ride in a vehicle being driven by someone with a suspended license.

{¶ 33} The majority opinion suggests that perhaps Detective Martens had a reasonable, articulable suspicion to believe that Hale had engaged in negligent entrustment because she stated that she had asked Cunningham to drive her to the store. But Hale did not inform Detective Martens of that fact until *after* Detective Martens detained her and told her that she was not free to leave. And regardless, Detective Martens had no reason to believe that Hale knew Cunningham's driver's license was suspended or that Hale owned or had control over the minivan that Cunningham had driven. *See* R.C. 4511.203(A)(2) ("No person shall permit a motor vehicle owned by the person or under the person's control to be driven by another if . . . [t]he offender knows or has reasonable cause to believe that the other person's driver's or commercial driver's license . . . [has] been suspended . . . ."). Therefore, Detective Martens did not have a reasonable, articulable suspicion that Hale had participated in any sort of criminal activity, so this was not a proper investigatory stop of Hale, and the only way the stop could be justified under the Fourth Amendment is if it was a traffic stop and Hale was still a passenger in the vehicle.

{¶ 34} But this was not a typical traffic stop. The vehicle was *already parked* in the convenience store's parking lot and both Cunningham and *Hale had already exited the vehicle* when Detective Martens and other law-enforcement officers arrived on the scene. In fact, Hale was coming out of the convenience store when Detective Martens pulled into the parking lot. As discussed below, while courts have held that law-enforcement officers may legally order passengers of a lawfully stopped vehicle to get out of the vehicle under certain circumstances, no

15

court that I am aware of, other than the Fifth District in this case, has ever held that officers may detain people who have been recent passengers in a vehicle that was already parked when officers arrived.

{¶ 35} In *Maryland v. Wilson*, 519 U.S. 408, 414-415 (1997), the United States Supreme Court held that law-enforcement officers may order passengers out of a vehicle during a traffic stop to protect officer safety. However, the Court noted that passengers have a stronger liberty interest than drivers because while the officer making the stop has probable cause to believe the driver has committed a vehicular offense, there is no probable cause to believe that the passenger has committed a crime. *Id.* at 413. The court stated that therefore, "there is no such reason to stop or detain the passengers," *id.*, but held that because passengers are already detained by virtue of the traffic stop, *id.* at 414, ordering them to exit the vehicle is a "minimal" additional intrusion that is warranted by the interest in officer safety, *id.* at 415.

{¶ 36} However, the Court's reasoning in *Wilson* does not extend to people who were recent passengers of a vehicle that was already parked when officers arrived. Unlike in a true traffic stop that occurs along a roadway, recent passengers of a parked vehicle have not been "already stopped" by law enforcement, *id.* at 414. Therefore, any additional intrusion by an officer in detaining a recent passenger of a parked vehicle is not "minimal." Furthermore, the interest in officer safety is not nearly as strong when a recent passenger has left a vehicle and gone inside a retail establishment. If officer safety could justify an officer's detaining a recent passenger of a vehicle who is attempting to reenter a retail establishment, then it could justify the officer's detaining everyone inside that retail establishment merely because officers are conducting a traffic stop in the parking lot outside. That cannot be and is not the case. The circumstances in *Wilson* that justified allowing officers to order a passenger out of a vehicle are simply not present in this case, because here, the vehicle was already parked at a retail establishment and the passenger was

outside the vehicle and attempting to reenter the store.

{¶ 37} Furthermore, while officers may detain passengers of a vehicle to protect officer safety, that exception to the warrant requirement of the Fourth Amendment is inapplicable here because Hale was not jeopardizing officer safety in any way. Unlike the stop at issue in *Brendlin v. California*, 551 U.S. 249, 258 (2007), in which the United States Supreme Court held that officers may detain passengers of a vehicle who are jeopardizing officer safety, Cunningham's vehicle was not stopped along the road. His vehicle was parked in the parking lot of a convenience store when Detective Martens initiated the stop, and Hale had already gotten out of the vehicle, gone inside the store once, returned to the vehicle, and *was attempting to go back inside the store* when Detective Martens detained her. Far from moving around the scene jeopardizing officer safety, Hale actually asked that she be allowed to leave the scene. This is not the situation that was contemplated by the Court in *Brendlin*.

{¶ 38} Nor was Hale exercising control over a "center of suspected criminal activity" as the majority opinion suggests. *See* majority opinion at ¶ 23. In *Arizona v. Gant*, 556 U.S. 332, 335 (2009), the United States Supreme Court held that law-enforcement officers may not search a vehicle if they do not have probable cause to believe that they will find evidence of the suspected crime in the vehicle. In that case, as in this case, the driver of the vehicle was suspected of driving with a suspended license. The Court held that the driver's arrest for driving with a suspended license did not justify the officers' search of the vehicle, because it was not reasonable to believe that evidence of the offense of arrest would be found in the vehicle. *Id.*

{¶ 39} Likewise in this case, when Hale was detained, Detective Martens had reasonable suspicion to believe that Cunningham had been driving without a valid license. But there would be no evidence of that offense in the vehicle. Therefore, Detective Martens did not have a right to search the vehicle during

Hale's detention, and he did not have any reason to believe that Hale was removing evidence of a crime or meddling with a crime scene. Hale had every right to remove her belongings from the vehicle when she did. Furthermore, even if Detective Martens had reason to believe that Hale was meddling with a crime scene, which he did not, he could have ordered her to stop what she was doing short of actually detaining her. Then, if she had continued her actions, it would have been reasonable for Detective Martens to detain her *at that point*, but not before.

**{¶ 40}** Hale's detention was not a traffic stop. It was not an investigatory stop. Detective Martens had no reason to believe that allowing Hale to leave the scene would jeopardize officer safety or the integrity of a crime scene. In short, Hale's detention violated the Fourth Amendment to the United States Constitution. Therefore, I dissent and would reverse the decision of the Fifth District Court of Appeals.

———————————

Jenny Wells, Licking County Prosecuting Attorney, and Kenneth W. Oswalt, Assistant Prosecuting Attorney, for appellee.

Elizabeth R. Miller, Ohio Public Defender, and Craig M. Jaquith, Assistant Public Defender, for appellant.

———————————